IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

BHAVNA KUMAR

VS.                                    CIVIL ACTION NO. 1:07CV263-DAS

ARVIND KUMAR, Individually and
As Manager of MIT-SAR L.L.C.;
MIT-SAR L.L.C., A MISSISSIPPI L.L.C.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case came on to be heard by the court on the plaintiff's Second Amended Complaint,

and a bench trial was held December 9-11, 2008.  The court, having heard and considered the

evidence presented by the parties during the trial of this matter, hereby enters the following

findings of fact and conclusions of law:

## I. FINDINGS OF FACT

Bhavna and Arvind Kumar were married in the United Kingdom in 1979 and moved to

the United States the following year.  After arriving in the United States, they both worked in

family-owned hotels, first in Tampa, Florida and later in Orlando, Florida.  In the course of their

employment in their relatives' hotels, they performed a wide variety of hotel-related tasks and

duties including front desk work, maintenance, cleaning rooms, and laundry services.  The

couple eventually settled in West Point, Mississippi and became naturalized citizens.  They

bought their first hotel there and subsequently performed all of the tasks necessary to operate and

maintain the hotel.  Later, after moving to Columbus, Mississippi, they purchased a Hampton Inn

and the Wingate Inn.  During this time, Mrs. Kumar worked at the Hampton Inn, handling the

administrative aspects of the business, while Mr. Kumar worked at the Wingate.  In 2003, they

1

bought an additional property in Columbus, which is currently operated as a Holiday Inn and is the subject of this lawsuit.  This Holiday Inn property is operated by Mit-Sar, LLC.

In December 2001, Mr. and Mrs. Kumar entered into the Mit-Sar, LLC Limited Liability Agreement ("Mit-Sar Agreement"), forming Mit-Sar, LLC ("Mit-Sar") for the purpose of purchasing certain real estate and other property and using said property to operate a hotel and related commercial interests in Columbus, Mississippi.  Pursuant to the Mit-Sar Agreement, Mr. and Mrs. Kumar are the only members of the LLC, and each owns fifty percent of the membership interests having provided equal amounts of capital.  As a result of their equal ownership interests in Mit-Sar, Mr. and Mrs. Kumar share profits and losses equally under the terms of the Mit-Sar Agreement.

The Mit-Sar Agreement does not require either Mr. or Mrs. Kumar to work at the Holiday Inn operated by Mit-Sar or to provide any services in exchange for their interests in the company.  Under the terms of Section IV of the Mit-Sar Agreement, Mr. and Mrs. Kumar agreed "to diligently promote and support the business conducted by the limited liability company and agreed to be faithful to each other in all transactions related to this limited liability company."  Other pertinent provisions of the Mit-Sar Agreement include:

Section VI

Profits and Losses . . . [N]o distributions, withdrawals or loans may be made to any member without unanimous consent of the members, the date, amount, and frequency of which shall also be determined by unanimous decision of the members.

. . .

Section X

Future Contributions . . . Except as otherwise provided in this agreement, no member shall demand or receive a return of his Capital Contribution or withdraw same from the company without the consent of all Members . . . .

No Member shall receive any interest, salary or drawing with respect to his capital contributions or his capital account or for services rendered on behalf of the company or otherwise in his capacity as a member, except as otherwise provided in this Agreement.

. . .

Section XIII

1. In general . . . .

    . . .

    (b) . . . Company funds shall not be commingled with funds from other sources and shall be used solely for the business of the Company.

    . . .

    (g) . .. Notwithstanding other provisions of this Agreement, a Member may be employed by the Manager and paid a salary commensurate with the services rendered only by Agreement of all Members.
    . . .

2. Number, Tenure and Qualifications . . . The Manager may be paid a salary commensurate with the services rendered as set forth from time to time by all members . . . .

As mentioned, on June 30, 2003, Mr. and Mrs. Kumar took title to property in Lowndes

County, Mississippi, currently known as the Holiday Inn, in their respective names.

This property was initially financed by Dr. Sethi through the extension of purchase money

financing to Mr. and Mrs. Kumar.  The original financing was refinanced in 2003 by Peoples

Bank, which today is Renasant Bank.  This new mortgage loan is a personal liability loan and

was extended to Mr. and Mrs. Kumar in their individual names and in their individual capacities.

Mit-Sar does not own any interest in the underlying property and is not responsible for its mortgage debt. However, Mit-Sar has at all times since its formation operated the property as a franchise hotel in the name of Holiday Inn pursuant to a franchise agreement executed by Mr. and Mrs. Kumar individually with Holiday Hospitality Franchising, Inc. Mit-Sar is not a party to the franchise agreement. The market value of the Holiday Inn Property, however, is dependent to a significant degree on the existence of this franchise agreement.

It is undisputed that before Mr. and Mrs. Kumar separated, they both worked at the Holiday Inn. With the exception of a two or three month period in the beginning of her employment at the Holiday Inn, Mrs. Kumar was not paid a salary by Mit-Sar for the services she provided. Similarly, Mr. Kumar did not receive a salary for any services he provided to Mit-Sar until January 2007.

After beginning work at the Holiday Inn, Mrs. Kumar worked with Mary Ellen Allison in the "back office" handling various administrative duties. Ms. Allison's duties included making deposits, handling payroll, purchasing, and paying bills, and Mrs. Kumar was responsible for overseeing many of these activities. Mrs. Kumar also reviewed bookkeeping entries done by Ms. Allison. Mrs. Kumar also relied upon Watkins Ward & Stafford, PLLC ("Watkins Ward"), an accounting firm in West Point, Mississippi, to provide bookkeeping services.[1] Ms. Tiffany Wyers took over as controller when Ms. Allison left as bookkeeper in December 2006. Ms.

---

[1] Watkins Ward assisted with the initial formation of Mit-Sar in 2001 and provided general accounting, bookkeeping, and tax services until January 2007 when Mr. Kumar hired Integral Hospitality Solutions ("Integral") to manage and operate the Holiday Inn through Mit-Sar. Integral's duties include the performance of accounting and bookkeeping services as well as preparation of monthly financial statements. However, Watkins Ward has continued to prepare Mit-Sar's federal and state tax returns.

Wyers had previously worked as a front desk clerk at the hotel beginning in July 2003. Ms. Wyers' uncontroverted testimony was that she was hired and trained for the front desk position by Mrs. Kumar and that Mrs. Kumar was general manager at the time.

While Mrs. Kumar worked mainly in the administrative/bookkeeping areas of the business, Mr. Kumar exerted an extraordinary amount of time and energy operating the hotel, doing everything from managing an extensive remodeling to daily maintenance, management of the bar, and public relations with customers of the hotel. All of these services were described as invaluable by Tom Muse, a manager provided by Integral to operate the property subsequent to Mrs. Kumar's departure.

After twenty-five years of marriage, Mrs. Kumar filed for divorce on July 30, 2004 in the Chancery Court of Lowndes County, Mississippi. Mrs. Kumar left the marital home for the last time in late July or early August 2005 and did not return to work at the hotel. Despite Mrs. Kumar's absence, Mr. Kumar, as part owner of Mit-Sar, continued to operate the Holiday Inn. Mrs. Kumar was partially aware of Mr. Kumar's activities during her absence and eventually became concerned that Mr. Kumar may have been mishandling the funds of Mit-Sar.[2] Consequently, before filing the present action, Mrs. Kumar made demand upon Mit-Sar and Mr. Kumar, by letter dated April 17, 2007, seeking access to the company's books and records. By letter dated July 3, 2007, Mrs. Kumar made demand on Mit-Sar and Mr. Kumar, requesting appointment of an independent management company to be agreed upon by the parties to serve

---

[2]Bhavna Kumar, is now a resident of Atlanta, Georgia, and Arvind Kumar, is a resident of Columbus, Mississippi. The defendant, Mit-Sar, LLC ("Mit-Sar") is a limited liability company, organized and existing under the laws of the State of Mississippi with its principal place of business in Lowndes County, Mississippi.

as Mit-Sar's Manager and to perform an independent accounting of Mit-Sar's assets and liabilities. Mrs. Kumar then filed her initial Complaint against Mr. Kumar and Mit-Sar on November 8, 2007.

By letter dated February 27, 2008, Mrs. Kumar made demand on Mit-Sar and Mr. Kumar to stop making improper distributions or payments of Mit-Sar funds to Mr. Kumar. By letter dated, March 6, 2008, Mrs. Kumar made demand on Mit-Sar and Mr. Kumar, requesting appointment of an independent receiver to oversee the management and operation of Mit-Sar and the Holiday Inn Property and to perform an independent accounting of Mit-Sar's assets and liabilities and the misappropriation of the assets and funds of Mit-Sar by Mr. Kumar as well as the return of such funds to Mit-Sar.

Mrs. Kumar filed her Second Amended Complaint on March 7, 2008. In the Second Amended Complaint, Mrs. Kumar asserted six counts for relief: (1) Count I: Preliminary and Permanent Injunction; (2) Count II: Appointment of Receiver and Accounting or Alternatively a Preliminary and Permanent Injunction Prohibiting Misappropriation, Conversion and Improper Distribution of Mit-Sar Funds; (3) Count III: Breach of Contract; (4) Count IV: Breach of Fiduciary Duties; (5) Count V: Misappropriation/Conversion of Mit-Sar Assets and Funds; and (6) Count VI: Dissolution of Mit-Sar.

On March 14, 2008, the defendants filed their Answer and Counterclaim to the plaintiff's Second Amended Complaint. The defendants denied liability and asserted affirmatively, among other defenses, that the "subject matter of this dispute between the parties is properly vested in the Chancery Court of Lowndes County, Mississippi." In their Counterclaim, the defendants sought damages for Mrs. Kumar's withdrawal of Mit-Sar funds.

On December 2, 2008, the case was reassigned to the undersigned United States Magistrate Judge because of a potential conflict of interest identified by Magistrate Judge Allan Alexander that arose as a result of an expert witness designation by Mrs. Kumar, and an Agreed Pretrial Order was entered on December 8, 2008.

Trial began on December 9, 2008, and following trial both parties submitted Proposed Findings of Fact and Conclusions of Law. Consistent with arguments made and evidence submitted at trial, both parties devoted much of their findings to whether Mr. Kumar violated the terms of the Mit-Sar agreement, and if so, to what extent. The court finds it plainly evident that Mr. Kumar violated the terms of the agreement. However, the court also finds that Mrs. Kumar was aware of many of these violations, and indeed many similar ones occurred while she worked at the hotel. Indeed, the court finds Mrs. Kumar also violated the terms of the agreement. Consequently, the court does not find it equitable simply to look to the amount withdrawn by Mr. Kumar from Mit-Sar funds from the date Mrs. Kumar left, divide that number by one-half, and order that amount paid to Mrs. Kumar. Understanding that both parties are equal members of Mit-Sar and that both parties have received inappropriate benefits during the period of time at issue, the court will examine the actions of both parties and apportion the benefits accordingly. To make it as clear as possible, the court will address these issues one year at a time from 2005 through 2008.

To begin, the court notes that the plaintiff's expert was a certified public accountant, Robert Alexander. Mr. Alexander testified at length during trial, and his report was admitted into evidence. Both parties referred to Mr. Alexander's report at length during trial and in their proposed findings. Despite the court's determination that Mr. Alexander's report is lacking in

several areas, the court finds it useful to utilize Mr. Alexander's testimony and report as a reference point to make the following findings. The court will begin with 2005.

Before addressing the allocations made each year, however, the court will address the loans made by Mit-Sar and more specifically, the way in which these loans were made. These loans were addressed at length during trial and in the parties' respective findings. While the court does not feel the issue deserves an extremely detailed discussion, examining these loans does help provide a picture – at least a partial one – of how Mit-Sar operated its business.

Numerous loans of Mit-Sar funds were made to family members and friends of Mr. Kumar and Mrs. Kumar. These loans to third parties, which according to Mit-Sar's books and records total $509,996.81 as of the end of September 2008, were all interest free loans. None of these loans was secured by a note or other security agreement. Mrs. Kumar testified that prior to her separation from Mr. Kumar in 2005, she was aware of some, but not all, of the loans of Mit-Sar funds.[3] She further testified that she did not specifically approve the loans but may have signed the checks for some of them.

Mrs. Kumar's expert, Robert Alexander, testified that these loans placed the capital of Mit-Sar at risk for the amount still outstanding, and the company has received no compensation for that risk in the form of interest. Mr. Alexander concluded that Mit-Sar's August 2008 Balance Sheet and General Ledger show that $156,065 is outstanding on six of the loans.

Mr. Kumar's uncontroverted testimony was that in Indian culture charging interest and

---

[3] The uncontroverted testimony of Mary Ellen Allison was that Mrs. Kumar had a record book of loans to and from family members and friends which she prepared and retained.

requiring a promissory note or other documentation for a loan from a friend or family member was not common practice and that a person's word was considered their "bond." The undisputed evidence in this case shows that Mr. and Mrs. Kumar received substantial amounts of money from friends and family to purchase what is now the Holiday Inn and to finance renovations. Dr. Sethi financed the purchase of the Hotel and gave Mr. and Mrs. Kumar $500,000 for renovations. Mr. Kumar further testified that he received additional purchase money and money for renovations from friends and family, including Jay Patel, S. Patel, Suresh Patel, Nita Patel, and U.P. Patel. None of these friends and family required a security agreement. Mr. Alexander agreed that family loans to Mit-Sar at the beginning of the reconstruction of the Holiday Inn would certainly have benefitted Mit-Sar because Mit-Sar had to pay no interest. Mr. Alexander further acknowledged that of the loan transactions reflected in his report, only one of them occurred after the couple's separation.

The court finds that the credible evidence shows Mrs. Kumar knew about and consented to all but one of the loans identified in Mr. Alexander's report. This is typical of the way in which Mit-Sar was operated. Because Mrs. Kumar was aware of this process, the court finds that no portion of the loans should be allocated to the benefit of Mr. Kumar. As regards repayment of the loans, however, the court finds that Mr. Alexander's allocation of a loan repayment by Anjali LLC for $69,000 to Mr. Kumar's benefit was correct. Though it is clear that the $69,000 payment was a check from Anjali, LLC to pay off the loan made by Mit-Sar, and the check deposit describing the payment as a loan payoff made that more than clear, the payment was booked as a capital contribution by Mr. Kumar.

### a. **2005**

In his report, Mr. Alexander allocated $178,140 to Mr. Kumar for 2005 based upon the general ledger entries for the "305 Due To Arvind Account."[4]  It was Mr. Alexander's opinion, therefore, that because Mrs. Kumar was a fifty percent owner in the LLC, she was entitled to fifty percent of the money withdrawn in 2005 by Mr. Kumar in violation of the agreement, or $89,070.  However, in that calculation, Mr. Alexander included $100,000 related to journal entries for which he had no explanation.  He simply characterized these entries as compensation and personal benefit to Mr. Kumar.  Those two entries occurred on November 30, 2005 ($50,000) and December 31, 2005 ($50,000).[5]

Mit-Sar's CPA, Robin McCormick, testified, however, that those transactions reflect corrections in the source of the funds and that neither represented any type of compensation to Mr. Kumar.  She testified that the November 30, 2005 entry was a loan to Mit-Sar from Nita Patel, which was misclassified as a loan from Mr. Kumar.  Ms. McCormick testified that the amount was corrected and re-coded as an amount "due to Nita."  Ms. McCormick testified that the entry was neither compensation nor an amount attributable to the benefit of Mr. Kumar but functioned merely as a reclassification.  Ms. McCormick also testified that the December 31

---

[4] After Integral assumed responsibility for Mit-Sar's accounting functions in January 2007, this account became noted as Account 15190 styled "Notes Payable 2."  Robin McCormick, Mit-Sar's CPA, testified that this account documented when Mr. Kumar put money into Mit-Sar to be used for business purposes and when money was taken out of Mit-Sar in the form of loans.

[5] The court notes that in their Proposed Findings of Fact and Conclusions of Law, the parties addressed numerous issues.  However, the court will not address those issues for which there was no evidence submitted at trial or those to which the opposing side does not challenge.  As an example, the defendant contends that in 2005 there was an allegedly inappropriate allocation made to him for $5,743.60, but there was no explanation provided at trial with respect to this allocation.  As such, the court cannot consider the explanation now provided to the court.

$50,000.00 was reclassified in a similar manner.  She further testified that these positive reclassification entries completely washed out corresponding negative entries for that year.  The court finds Ms. McCormick's testimony compelling, and the $100,000 discussed should not be allocated to the benefit of Mr. Kumar.

Next in 2005, the evidence showed that Mit-Sar funds were used to make personal automobile payments in 2005.  Although Mr. Alexander allocated $2,396.56 in automobile payments to Mr. Kumar for 2005, those payments were made from Mit-Sar funds for vehicles owned by Mrs. Kumar and used by the couple's children.  Mrs. Kumar was aware of the loans for the Nissan and BMW automobiles because both of the loans were in her name and both of the vehicles were titled to her.  The draft for the payments on the Nissan began on August 31, 2005, and the payments to Trustmark followed shortly thereafter.  Mr. Kumar testified that at Mrs. Kumar's request, he gave her blank checks to set up the drafts for these payments.  After the parties' separation, the BMW remained in the possession of their daughter.  Mr. Kumar maintained possession of the Nissan following the death of the parties' son; however, there is no credible evidence that Mrs. Kumar made any request to Mr. Kumar for possession of the vehicle.  Accordingly, the court finds that Mr. Alexander's allocation of the full amount of Nissan payments to Mr. Kumar for 2005 was erroneous.  Instead, Mr. and Mrs. Kumar each received no more than equal benefit from the car payments and should each be allocated an equal share of the payments or $1,198.28.

**b. 2006**

For 2006 Mr. Alexander allocated all items in the "305" account as compensation to the benefit of Mr. Kumar except clear transfers to Mrs. Kumar.  The 2006 amount allocated to Mr.

Kumar by Mr. Anderson totalled $110,520. Alexander followed the same methodology with the automobile loan payments, and for the reasons already discussed, this allocation is erroneous. The Kumars should each be allocated a personal benefit of one-half of the total automobile payments.

Next, the evidence shows Mr. Alexander overlooked a clear transfer to Mr. Kumar's benefit for $10,000 on April 13, 2006. Mr. Alexander also failed to allocate to Mrs. Kumar a wire transfer of $80,000 on June 7, 2006, which was wired to her benefit.[6] Mr. Alexander acknowledged that he overlooked that transfer and testified that he did not review any of Mrs. Kumar's bank records. Mrs. Kumar testified that she could not remember if she had received that money because she had not had time to research her Bank of America records. The court finds that Mrs. Kumar received an additional $80,000 for her personal benefit in 2006. Lastly, Mr. Alexander's undisputed conclusion was that Mr. Kumar used Mit-Sar funds to pay for $5,392 in personal hotel and travel expenses related to a trip to England.

### c. **2007**

Again, automobile payments should be allocated equally among the parties for 2007.

Mr. Alexander allocated payments for life insurance premiums in 2007 of $13,912.71 to Mr. Kumar. However, Mr. Alexander did not attribute any portion of the New York life insurance premiums to Mrs. Kumar. The premiums for New York Life Insurance policies were being paid for several years prior to the parties' separation. Payment for those premiums began as early May 2002 and have continued to the present date. At least three of these New York life

---

[6] The 2006 ledger shows the transfer as of June 30, 2006. The bank statement reflects the entry "outgoing wire…BNF Bhavna Kumar…80,000…"

policies show Mrs. Kumar as the insured, and Mit-Sar made monthly payments in the amount of $867.20 for these policies.[7]  Because payments for the life insurance premiums began approximately three years prior to the parties' separation and at least three of the policies insure Mrs. Kumar's life, the court finds that Mrs. Kumar was aware that the premium payments were being made by Mit-Sar and did not object to them.  Accordingly, the portion of the life insurance premiums paid by Mit-Sar on Mrs. Kumar's policies should be deducted from Mr. Alexander's allocation to Mr. Kumar and reallocated to Mrs. Kumar.

Next, a portion of the total benefit allocated to Mr. Kumar by Mr. Alexander relates to other payments to AAS and/or Midwest.  There was insufficient evidence explaining the nature of these payments, and thus, the court finds the amount for these payments should be deducted from the amount allocated to Mr. Kumar by Mr. Alexander.

The court adopts Mr. Alexander's finding that in 2007 Mr. Kumar used another $8,230 in Mit-Sar funds for personal travel expenses and $1,375 to pay for his appellee brief in the divorce proceedings, and $15,000 paid to his nephew, Bharat Patel, for managing the Holiday Inn in November and December.

Finally, the evidence in this case shows that Mr. Kumar took $90,000 in salary and an additional $25,000 in Mit-Sar funds, and this amount – $115,000 – should also be allocated to the benefit of Mr. Kumar in 2007.

---

[7]There was some testimony by Mr. Kumar and Mr. Alexander that at least some of these policies were procured to secure the bank loan which had an outstanding balance of $3,776,356.14 as of August 2008.  However, there is no credible evidence in this case establishing the business relationship of those policies.

**d. 2008**

For the reasons set out above, amendments to Mr. Alexander's 2008 allocation to Mr. Kumar are necessary for the auto loans and life insurance premium payments. Additionally, the court agrees with Mr. Alexander's allocation to Mr. Kumar for two $10,000 checks in August 2008 drawn on Mit-Sar's account, one payable to himself and another to his nephew.

## II. CONCLUSIONS OF LAW

This Court has diversity jurisdiction over this matter pursuant to Title 28, Section 1332 of the United States Code. As the court has previously ruled, it is not required to abstain from exercising this grant of jurisdiction under the domestic law exception because this case arises out of the contractual relationship between Mr. and Mrs. Kumar.

The plaintiff has asserted several claims against the defendants in the Second Amended Complaint, including breach of contract, breach of fiduciary duties, misappropriation/conversion, and a permanent injunction or, alternatively, appointment of a receiver. In addition to injunctive relief, Mrs. Kumar seeks an award of damages. The defendants, on the other hand, have asserted a counterclaim against the plaintiff based upon her unauthorized withdrawal of Mit-Sar funds.[8] The court will address each of these claims in turn.

### A. The Plaintiff's Claims

***Breach of Contract***

Mrs. Kumar alleges that Mr. Kumar breached several terms of the Mit-Sar Agreement. By the terms of the Mit-Sar Agreement, Mr. Kumar and Mrs. Kumar "agree[d] to diligently

---

[8] In "Defendants' Proposed Findings of Fact and Law," the defendants failed to submit proposed conclusions of law for consideration by the court.

promote and support the business conducted by the limited liability company and agree[d] to be faithful to each other in all transactions related to this limited liability company." Mit-Sar Agreement, Section IV. Further, the Mit-Sar Agreement provides that "[c]ompany funds . . . shall be used solely for the business of the Company." Mit-Sar Agreement, Section XIII.1(b). Mr. Kumar and Mrs. Kumar further agreed that all books and records of the company shall be immediately available to any member:

> Books and Records. There shall be books and accounts of the business kept by and under the direction of the Manager and there shall be a true account of all monies, goods, debts, sales, purchases, receipts, payments, and other business of the limited liability company, and said books and records shall be available to any of the members at any reasonable time that they may desire to see or examine same.

Mit-Sar Agreement, Section V.

In addition, the Mit-Sar Agreement provides in numerous places that no distributions, withdrawals, loans, or salaries may be made to any member without unanimous consent:

> However, no distributions, withdrawals or loans may be made to any member without unanimous consent of the members, the date, amount, and frequency of which shall also be determined by unanimous decision of the members.

Mit-Sar Agreement, Section VI.

> Except as otherwise provided in this agreement, no member shall demand or receive a return of his Capital Contribution or withdraw same from the company without the consent of all Members.
>
> Mit-Sar Agreement, Section X.
>
> No Member shall receive any interest, salary or drawing with respect to his capital contributions or his capital account or for services rendered on behalf of the company or otherwise in his capacity as a member, except as otherwise provided in this Agreement.
>
> Mit-Sar Agreement, Section X.
>
> Notwithstanding other provisions of this Agreement, a Member may be employed by

the Manager and paid a salary commensurate with the services rendered only by Agreement of all Members.

Mit-Sar Agreement, Section XIII.1.(g).

The Manager may be paid a salary commensurate with the services rendered as set forth from time to time by all members.

Mit-Sar Agreement, Section XIII.2.

Based upon the foregoing facts, the court finds that Mrs. Kumar is estopped from asserting breach of contract with regard to many of the foregoing provisions of the Mit-Sar Agreement. Indeed, the evidence in this case shows that both prior to and following their separation, both Mr. Kumar and Mrs. Kumar acted in contravention of the provisions of the Mit-Sar Agreement. Specifically with regard to Mr. Kumar's actions, Mrs. Kumar had knowledge of and did not object to those actions prior to the parties' separation, and she personally benefited from many of those actions following the separation.

Nevertheless, based upon the evidence, the court finds Mr. Kumar breached the Mit-Sar Agreement following the parties' separation by failing to provide Mrs. Kumar with immediate access to the books and records of Mit-Sar and by taking a salary and making distributions to himself and relatives. Mrs. Kumar has failed to prove that she is entitled to any damages, however, beyond as set out below.

### *Breach of Fiduciary Duty*

Mrs. Kumar has essentially filed a shareholder's derivative action against Mr. Kumar. She has alleged that Mr. Kumar breached a fiduciary duty to her and Mit-Sar. This duty is owed to Mit-Sar first and foremost and is only owed to Mrs. Kumar derivatively. *Derouen v. Murray*, 604 So. 2d 1086, 1090-91 (Miss. 1992). However, in the case of a closely held corporation, a

chancellor may treat a shareholder's derivative suit as a direct action and order an individual recovery as long as it will not prejudice the interests of the creditors, expose the corporation to multiple actions, and prejudice recovery for all other interested parties. *See ERA Franchise Sys. v. Mathis*, 931 So.2d 1278, 1281 (Miss. 2006) (citing *Derouen v. Murray*, 604 So.2d 1086, 1091, n. 2 (Miss. 1992)).

Pursuant to Section 79-29-402 of the Mississippi Code Annotated of 1972, as amended, (the "Mississippi Code"), "(1) A manager shall discharge his duties as manager: (a) In good faith; (b) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (c) In a manner he reasonably believes is to be in the best interests of the limited liability company." Additionally, under the Mit-Sar Agreement, the parties "agree[d] to be faithful to each other in all transactions related to . . . [the] company."

Mr. Kumar breached his fiduciary duty to Mrs. Kumar by taking a salary and making distributions to himself and his relatives without her consent or knowledge following the parties' separation. Accordingly, Mrs. Kumar is entitled to damages for said misappropriation and conversion as set out below.

### *Misappropriation & Conversion of Funds*

Mississippi case law does not set forth the elements of a misappropriation claim, but the Fifth Circuit has recognized that the "term 'misappropriation' is ordinarily understood as the unlawful taking or use of another person's property." *Sport Supply Group, Inc. v. Columbia Casualty Co.*, 335 F.3d 453, 461-62 (5th Cir. 2003). Black's Law Dictionary defines "misappropriation" as "[t]he application of another's property or money dishonestly to one's own use." BLACK'S LAW DICTIONARY 449 (2nd pocket ed. [2001]). "Conversion requires an intent to

exercise dominion or control over goods which is inconsistent with the true owner's right."

*Walker v.* Brown, 501 So. 2d 358, 361 (Miss. 1987). To make out a claim for conversion, "there must be proof of a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand." *Miss. Motor Fin., Inc. v. Thomas*, 149 So. 2d 20, 23 (Miss. 1963). In other words, "there must have been, on the part of the defendant, some unlawful assumption of dominion over the personal property involved, in defiance or exclusion of the plaintiff's rights, or else a withholding of the possession under a claim of right or title inconsistent with that of plaintiff." *Id*.

Under Mississippi law, the Court may order such misappropriated or converted funds to be repaid to the company or, in the case of a closely-held company with two fifty percent owners, to be paid by the misappropriating owner directly to his co-owner. *See Griffith v. Griffith*, No. 2006-CA-01849-COA, 2008 WL 5064921 (Miss. Ct. App. Dec. 2, 2008). Following their separation, Mr. Kumar breached his fiduciary duty to Mrs. Kumar and misappropriated funds. Mr. Kumar took a salary without Mrs. Kumar's consent and paid distributions to himself and to relatives. Mr. Kumar also used Mit-Sar funds to pay for personal expenses not related to Mit-Sar business. Nevertheless, the personal benefit received by Mr. Kumar should be reduced by the personal benefit that Mrs. Kumar received from the company in violation of the Mit-Sar Agreement. As such, Mrs. Kumar is entitled to damages from Mr. Kumar only in the amount of one half of the difference in benefits received by each party.

### *Removal of Mr. Kumar as Mit-Sar's Manager*

Mrs. Kumar contends that Mr. Kumar should be removed as manager of Mit-Sar as a

result of the personal benefits he has derived from the operation of the hotel. In light of the evidence that the parties' relationship under the agreement was greatly colored by their marriage relationship and the fact that the parties have never followed the strict terms of the Mit-Sar Agreement and have both received personal benefits in violation of said agreement, the relief sought by Mrs. Kumar is unwarranted. Indeed, the court finds that Mr. Kumar has been an asset to the Holiday Inn and ultimately to Mit-Sar.

When the parties separated, the gross revenues for the hotel totalled $2,755,000. Those revenues have increased each year.[9] Although there was some suggestion that the hotel property had fallen below Holiday Inn standards from time to time, the testimony of Tom Muse confirms that the hotel is in an excellent position according to the Holiday Inn ratings system. The undisputed testimony of Tom Muse, John Mayfield, Mary Ellen Allison, Tiffany Wyers and Brenda Woods all support the conclusion that Mr. Kumar has been nothing but an asset to the operation of the hotel. That undisputed testimony clearly confirms Mr. Kumar's commitment to the hotel, his active participation in all decisions regarding the hotel operation, the need for maintenance, repairs and remodeling, and a general understanding of the hotel industry. Therefore, the court finds removal of Mr. Kumar will have a detrimental effect on the Holiday Inn and ultimately Mit-Sar.

There was the suggestion, by implication only, that Mr. Kumar might be utilizing hotel funds for his personal gambling activities. There was no proof, however, to support this

---

[9] The gross revenues for each year of the operation were $2,755,000 for 2005, $3,092,000 for 2006, (without the benefit of any management to replace Mrs. Kumar) $3,375,000 for 2007 (which shows an increase despite extensive renovation and room down time) and $2,594,141 for the nine months of 2008.

implication.  Mrs. Kumar suggested that perhaps Mr. Kumar was receiving cash from hotel bar profits, but the undisputed testimony was that the bar cash, sales, and cover charges are deposited into the bar register and reported and deposited along with the other funds that are received.  The court concludes that Mr. Kumar's gambling activity is irrelevant to the case at hand, because the record is void of any proof that he used Mit-Sar assets for that purpose.  Accordingly, the court finds no basis for removing Mr. Kumar as manager of Mit-Sar.

### *Permanent Injunction*

Mississippi law authorizes this court to use its equitable powers to enforce the parties' agreement as the court in its discretion deems to be fair:

> A court of equity may enforce a limited liability company agreement by injunction or by any such other relief that the court in its discretion determines to be fair and appropriate in the circumstances.

MISS. CODE ANN. § 79-29-306 (3)(a).

The court finds that entry of a permanent injunction is within the best interest of the parties.  Rule 65 requires that "[e]very order granting an injunction . . . (A) state the reasons why it was issued; (B) state the terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."  Fed. R. Civ. P. 65(d).

Based on the findings set forth above, a prohibitory injunction is warranted in this case.  Therefore, absent further order of this court, or agreement of both Mr. Kumar and Mrs. Kumar, until such time as Mit-Sar is dissolved or the Holiday Inn Property is sold or its ownership is vested solely in Mr. Kumar or Mrs. Kumar, Mit-Sar's Manager and/or any future Manager, as well as any agents, servants, employees, attorneys, or other persons who are in active concert or

20

participate with any of the described individuals should be enjoined (1) from making any loans of Mit-Sar funds to third parties or the members, (2) from using Mit-Sar funds to pay any personal expenses of the members; (3) from expending funds for purposes not directly related to the operation of the Holiday Inn Property, and (4) from using any Mit-Sar funds for the payment of a salary, distribution or return of capital to the members in violation of the terms of the Mit-Sar Agreement.

### *Appointment of a Receiver*

Finally, the plaintiff has requested, as an alternative, that the court appoint a receiver. The "appointment [of a receiver] is in the sound discretion of the court." *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 239 (5th Cir. 1997). "A receivership is only a means to reach some legitimate end sought through the exercise of the power of a court of equity. It is not an end in itself." *Gordon v. Washington*, 295 U.S. 30, 37 (1935) (receiver may be appointed to protect and preserve property pending its final disposition). Moreover, the Supreme Court has stated that "a federal court of equity should not appoint a receiver where the appointment is not a remedy auxiliary to some primary relief which is sought and which equity may appropriately grant.*" Kelleam v. Maryland Cas. Co.*, 312 U.S. 377, 381 (1941). Based on the foregoing, appointment of a receiver is not appropriate.

### B. The Defendants' Counterclaim

As mentioned, in his answer, Mr. Kumar alleged that Mrs. Kumar withdrew Mit-Sar funds without approval. The court finds Mrs. Kumar did withdraw funds without approval; however, as discussed extensively, *both* Mr. and Mrs. Kumar withdrew funds from Mit-Sar in violation of the Mit-Sar Agreement and used those funds for their personal benefit. As such,

Mrs. Kumar has misappropriated and converted Mit-Sar funds, and Mr. Kumar is entitled to credit on Mrs. Kumar's claim in the amount of the value of the personal benefit improperly received by her. In other words, once the parties have calculated the benefit to each based on these findings and conclusions, the party that received the greater benefit shall have his or her benefit reduced by the other's benefit and that final number shall be reduced by half. The opposing party will be due that final amount.

### C. Judgment

Within ten (10) days of this date, the parties shall submit a proposed agreed judgment that is consistent with the foregoing findings and conclusions.

This, the 31st day of March 2009.

/s/ David A. Sanders
U. S. Magistrate Judge